Our final case for the morning is Liapis v. Bisignano. Mr. Duncan. Thank you, Your Honor. May it please the Court, Dana Duncan on behalf of Dimitrios Liapis. The issue presented this morning is straightforward. It's the application of the medical opinion rule under 20 CFR 404.1520C. Let me start by just indicating a couple of points that I wanted to clarify. The Supreme Court in Bistik clearly articulated that there are no categorical rules in these cases, primarily because they're fact-intensive. Mr. Liapis does concede the fact that the substantial evidence test is a relatively minimal standard of review, but this Court has indicated that where that standard review lacks is the failure to build a logical bridge between the evidence and the findings made by the ALJ. This Court has not really created, per se, categorical rules, per se, but there are pressure points that this Court has offered where judicial review should be looked at in those particular cases, such things as when there is a reference to daily activities and those daily activities do not take the extra step of showing how they equate to the ability to perform full-time, sustained work. Another one is where the mental status examinations and other medical evidence is cherry-picked, where there is other evidence that is completely ignored by the ALJ in assessing or coming to conclusions. In this particular case, the ALJ based his decision to give lesser weight to Dr. Pushkash's opinion based upon three points. Now, I would point that the issue in this is that he found marked limitations. Even if this would have been a moderate limitation, even the ALJ found moderate limitations. The state agency doctors found moderate limitations in concentration, persistence, and pace. And, quite frankly, the RFC never addresses concentration, persistence, and pace consistent with this Court's rulings in such cases as Varga and recently in Moy. But that was not raised in the district court, but the argument that this would be somehow harmless because just the marked limitation finding is not poignant because of the fact that even a moderate would have been a more favorable result. By a marked limitation, that means there would have been no useful ability to concentrate or focus within a work setting. And that's ultimately what the issue is. Now, we have a couple of different points here. The first one he raised is a one-time evaluation. Let me just point this out, which is the only time that you ever see a one-time evaluation is when the ALJ disagrees with the conclusion. Okay? You don't see it raised when, oh, I agree with this one-time evaluation. And, in fact, we have one-time evaluations done by the state agency. They are just not even examining Mr. Laiapas. They're examining the records from Mr. Laiapas' claim. And they're giving a one-time evaluation. And that is not given any different consideration than the actual person who actually examines him. Now, the government in reply or in response has indicated that considerations such as this court's precedent on giving more weight to the state agencies or the commissioner's own evaluation is meaningless. But sub 3 of the rule on medical opinion says that the nature and circumstances of the treatment is a consideration. The judge just does not have to articulate it in the decision. But there's nothing in here that shows any consideration was given to that. Moreover, at what point in time does a one-time evaluation have anything? We would have no consultative examinations if that was the logical thing. So there is a problem with a logical bridge on that. This court, the next one was the confabulation of the physical and mental limitations. My brief cites this precedent within the circuit that a psychologist can opine on physical limitations associated with mental claims, especially in such cases as a pain finding or a pain disorder, which is what Mr. Laiapas was diagnosed with. So there's nothing really there that prevents Dr. Pushkesh from making that finding, especially based on the fact that in the findings in the exhibit, his report, he's making findings about pain behaviors, inability to have a normal gait, all kinds of different things that he personally observed with Mr. Laiapas during the evaluation. So he was in good point to do that. I would also note that the ALJ points to good mental status exams, good symptom control, and conservative treatment. Well, this court has ruled in other cases that conservative treatment in and of itself is not a good logical bridge unless the ALJ can point out what other types of treatment options were available. Other than the fact that Mr. Laiapas was on heavy doses of narcotics, had foot fusion to try to alleviate the pain in his foot and ankle, I didn't see anything within the record that showed that there was any treatment that he was offered that he did not accept and try. So conservative treatment is not necessarily a viable option. The ALJ, and unfortunately this is becoming all too common, just cites Exhibit 4F for most of the rest of this stuff. That's 300 pages of records. And I guess the judge was expecting the attorneys and the courts to review it and figure out which part of that 300 pages mattered and which supported his claim. The government's response outlines a lot of different things in the record, but principles of administrative law indicate that you're left with what the judge says, not what the government fills in the gaps with. And there's just nothing there to establish that. Moreover, there was cherry picking because there's numerous references to being agitated in his psychiatric meetings with the VA doctors and psychologists, him having anxiety issues, him being anxious about his daughter being in the military. I mean, there's just tons of reference, pain behavior, etc. None of that has been addressed. So in other words, this is a mischaracterization in a large part of the evidence. So ultimately, the issue in this is that, yes, substantial evidence is a low standard, but at some point in time, a logical bridge must be established. This court has established pressure points that say that these are to be looked at. When you look at the pressure points or the reasons given by the ALJ, precedent is contrary to what exactly the findings were to support it. So therefore, there is no logical bridge. I just ask this court to apply the principles and the precedent outlined in my brief on these points and to reverse this under Step 4 of 42 U.S.C. 406G. I will reserve the remaining time for rebuttal unless there's questions. Thank you, Mr. Duncan. Ms. Schacht. May it please the court, Meredith Schacht on behalf of the Commissioner of Social Security. As Mr. Duncan acknowledged, this is a very narrow case. There's only one issue, whether the ALJ erred in his assessment of psychologist Dr. Pushkash's opinion that Mr. Liapas had marked limitations and concentration and persistence. Starting with a few of Mr. Duncan's points, you know, he mentions or he asserts that the Commissioner cherry-picked evidence and says that there's evidence of agitation and anxiousness. But what Mr. or Dr. Pushkash opined to were deficits in concentration and persistence, and there's not evidence of deficits in concentration or persistence. The ALJ included restrictions in the RFC to address social limitations and other problems that Mr. Liapas experienced, but there simply is not evidence of limitations, significant limitations in concentration or persistence. The ALJ acknowledged, you know, moderate limitations and accommodated those, but there are not, there is not evidence of marked limitations. In fact, Mr. Pushkash's own observations, you know, his own report says there was no evidence of distractibility, that his mental status examination was unremarkable is what Dr. Pushkash said in his report and then later opined as to marked limitations. So the ALJ was rightly concerned that this single examination, when you look at the actual results of the examination, do not support the opinion. You know, whether it was a one-time evaluation, a record review, you know, multiple examinations, if the underlying evidence doesn't support the opinion, that's ultimately the problem here. And the ALJ accurately concluded that Dr. Pushkash's opinion was inconsistent with both Dr. Pushkash's own report and with significant other evidence in the record. And that meant that, in the terminology of the regulation, that it lacked consistency and that it lacked supportability, which are the two most important factors. The regulation expressly states those are the two most important factors and the only factors that the ALJ is required to address. The ALJ did adequately address those, properly applied the regulation, identified substantial evidence supporting his assessment, and so we would ask that the court affirm his decision. Thank you, counsel. Anything further, Mr. Duncan? Yes, just a couple of points, Your Honor. First of all, the government makes a big deal of the fact that there was no observed lack of concentration and focus during Dr. Pushkash's session. It's a pain complaint. Unless he's doing activity within the confines of that report, there's not likely to be those levels of concentration and persistence and pace issues that are arising. Dr. Pushkash outlined specifically the pain observances that he had and the fact that he had an abnormal gait, had all kinds of other associated issues. So unless you can establish in this court's head things that situations in a therapeutic setting do not match up necessarily with the ability to work. That's bad sin versus a commissioner. The fact that the counsel stated that the moderate limitations were accounted for, look at the RFC and compare it to any one of a whole host of cases on this point. That was never addressed. There's nothing in there. It does not match Varga. I argued Varga before this court. It does not match Varga. It does not match Moy. It does not match any one of a host of other cases. And finally, when the judge is looking at this single episode, there should be at least something that shows that it's matched up with some other evidence and looked at. Thank you, Mr. Duncan. All right. Thank you. The case is taken under advisement and the court will be in recess until this afternoon.